#### IN THE UNITED STATES DISTRICT COURT
#### WESTERN DISTRICT OF TEXAS
#### AUSTIN DIVISION

| | |
|---|---|
| **FIFTH GENERATION, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**DICK FAMILY, INC., D/B/A C&L DISTRIBUTING,**<br><br>Defendant,<br><br>and<br><br>**DICK FAMILY, INC., D/B/A C&L DISTRIBTING,**<br><br>Third-Party Plaintiff,<br><br>v.<br><br>**BRENNY TRANSPORTATION, INC.,**<br><br>Third-Party Defendant. | Case No. 1:25-CV-01205-ADA-DH<br><br>**DEFENDANT DICK FAMILY, INC., D/B/A C&L DISTIBUTING's ANSWER TO COMPLAINT AND THIRD-PARTY COMPLAINT** |

Defendant/Third-Party Plaintiff Dick Family, Inc., d/b/a C&L Distributing ("C&L"), as and for its Answer to the Complaint[1] against C&L by Plaintiff Fifth Generation, Inc. ("Fifth Generation") and as its Third-Party Complaint against Third-Party Defendant Brenny Transportation ("Brenny") states and alleges as follows:

#### C&L's ANSWER TO FIFTH GENERATION'S COMPLAINT

1. Paragraph 1 of Fifth Generation's Complaint refers to Fifth Generation's intent to conduct discovery pursuant to the Texas Rules of Civil Procedure. C&L lacks information on Fifth Generation's intent, but notes that, after this case was removed to this Court, the Texas Rules of Civil Procedure are no longer applicable and that discovery will be governed by

---

[1] ECF No. 1-5 ("Fifth Generation's Complaint")

1

the applicable provisions of the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

2. Paragraph 2 of Fifth Generation's Complaint is a statement of the relief that Fifth Generation is seeking, and therefore no response is required. To the extent a response is required, C&L denies any liability for any damages that Fifth Generation may have suffered.

3. C&L admits the allegations in Paragraph 3 of Fifth Generation's Complaint.

4. C&L admits the allegations in Paragraph 4 of Fifth Generation's Complaint.

5. C&L admits that on or about October 27, 2020, it submitted a document captioned "Fifth Generation, Inc. New Customer Form" to Fifth Generation. The contents of that document speak for themselves and, to the extent that the allegations in Paragraph 5 of Fifth Generation's Complaint misrepresent that document, the same are denied. Except as explicitly admitted, C&L denies the remainder of the allegations in Paragraph 5 of Fifth Generation's Complaint.

6. C&L admits that it has, in the past, ordered product from Fifth Generation and has made payment for such product. C&L denies that it has "picked up goods from Plaintiff Fifth Generation," as C&L instead has utilized a broker to arrange for shipment of such goods. Except as explicitly admitted, C&L denies the remainder of the allegations in Paragraph 6 of Fifth Generation's Complaint.

7. C&L admits that on or about February 5, 2024, it submitted an order to Fifth Generation for 1,100 cases of one-liter bottles of Tito's Handmade Vodka. The order speaks for itself, and C&L denies the allegations in Paragraph 7 of Fifth Generation's complaint to the extent that they differ from the contents of the order. C&L admits that the shipment for the order

left Fifth Generation's facility on a truck loaded by Fifth Generation on or about April 2, 2024. C&L expressly denies that the truck on which Fifth Generation loaded the product was identified by C&L or any agent of C&L, and affirmatively states that the driver of the truck was not acting on behalf of C&L or any agent of C&L. C&L admits that, to date, it has not remitted payment to Fifth Generation for the shipment, but affirmatively notes that C&L never received the product that was ordered. Except as explicitly admitted, C&L denies the remainder of the allegations in Paragraph 7 of Fifth Generation's Complaint.

8. C&L denies the allegations in Paragraph 8 that Fifth Generation "provided goods to [C&L]"; that C&L "accepted the goods"; and that C&L "become bound to pay [Fifth Generation] its designated charges" to the extent that the allegations refer to the product that forms the basis of this litigation. Except as explicitly admitted, C&L denies the remainder of the allegations in Paragraph 8 of Fifth Generation's Complaint.

9. The Affidavit of Bryan Platter, attached to Fifth Generation's Complaint speaks for itself. C&L affirmatively denies that any payment is due on the account, as the goods were never delivered to C&L or its designated agent. Except as explicitly admitted, C&L denies the remainder of the allegations in Paragraph 9 of Fifth Generation's Complaint.

10. C&L admits that it has not made any payments to Fifth Generation for the product that give rise to this litigation, but affirmatively states that payment did not become due as the product was never delivered to C&L or its designated agent. Except as explicitly admitted, C&L denies the remainder of the allegations in Paragraph 10 of Fifth Generation's Complaint.

11. C&L admits that this litigation concerns a single order in a series of orders placed by C&L to Fifth Generation. C&L affirmatively denies that any balance is due on the account.

Except as explicitly admitted, C&L denies the remainder of the allegations in Paragraph 11 of Fifth Generation's Complaint.

12. C&L denies the allegations in Paragraph 12 of Fifth Generation's Complaint.

13. C&L denies the allegations in Paragraph 13 of Fifth Generation's Complaint, including but not limited to that Fifth Generation is entitled to recover attorney fees or that Texas law applies to this transaction.

14. The section of Fifth Generation's Complaint captioned "Prayer" is Fifth Generation's request for relief, and therefore no response is required. To the extent a response is required, C&L denies any liability to Fifth Generation.

15. Except to the extent explicitly admitted herein, C&L denies each and every allegation asserted in Fifth Generation's Complaint and puts Fifth Generation to the strict proof thereof.

16. Without assuming any burden of pleading or proof that would otherwise rest on Fifth Generation, C&L asserts the following affirmative defenses, reserving the right to supplement its answer and defenses as discovery and investigation continue:

    a. Any damages that Fifth Generation can establish that it has suffered (existence of which C&L specifically disputes) were due, in whole or in part, to the negligence, acts, or omissions of Fifth Generation and/or third-parties over whom C&L has no control;

    b. Any damages that Fifth Generation can establish that it has suffered (existence of which C&L specifically disputes) were due, in whole or in part, to events, conditions, or circumstances beyond C&L's control , for which C&L is not legally liable;

  c. Any damages that Fifth Generation can establish that it has suffered (existence of which C&L specifically disputes) are barred, in whole or in part, for failure of Fifth Generation to mitigate its damages;

  d. Any damages that Fifth Generation can establish that it has suffered (existence of which C&L specifically disputes) were due, in whole or in part, by the doctrines of assumption of risk, comparative fault and/or comparative negligence;

  e. C&L affirmatively pleads that the claims and damages asserted by Fifth Generation may be barred by one or more of the affirmative defenses set forth in Fed. R. Civ. P. 8(c). The extent to which Fifth Generation's claims may be barred by one or more of such defenses not specifically set out above cannot be determined absent additional discovery. C&L therefore incorporates all such affirmative defenses as though fully stated herein.

## C&L'S THIRD-PARTY COMPLAINT

1. C&L incorporates its statements as answers to Fifth Generation's Complaint as if fully set out in this Third-Party Complaint.

2. C&L is a Minnesota corporation with a registered business address of 1020 Industrial Drive South, Sauk Rapids, Minnesota 56379.

3. Third-Party Defendant Brenny Transportation, Inc. ("Brenny") is a Minnesota corporation with a registered office address of 8505 Ridgeweood Road, St Joseph, Minnesota 56374.

4. The above-captioned Court has supplemental jurisdiction over this Third-Party Complaint pursuant to 28 U.S.C. § 1367(a), as the claims asserted in this Third-Party Complaint are so related to the claims asserted against C&L by Fifth Generation that they form part of the same case or controversy.

5. Brenny holds itself out to the world via its website (https://brennytransportation.com/) as a trucking company, referring to itself as a "premiere transportation and logistics company that specializes in the safe and efficient delivery of goods to businesses and individuals across the country," providing "a range of transportation services that meet [customers] unique needs, from long-haul trucking to last-mile delivery." Brenny encourages its customers to "outsource[e] their transportation needs to [Brenny]," stating that Brenny will "handle the logistics of getting [the customer's] goods where they need to go."

6. Based in part on these representations, C&L hired Brenny to arrange for shipment of the product at issue in this litigation to C&L's warehouse in Minnesota.

7. On or about February 6, 2024, Brenny reached out to Fifth Generation to schedule an appointment to pick up the shipment. Brenny stated that it did "not know what carrier will be picking this up yet but . . . will be sure to send you [Fifth Generation] the MC[2] when I know." (Footnote added).

8. Over the following eight weeks, Brenny on multiple occasions reached out to Fifth Generation to change the date or time of the pick up, continuously informing Fifth Generation that Brenny would "get you the company/MC" for the carrier.

9. On March 27, 2024, Fifth Generation confirmed with Brenny that the pick up time had been adjusted to 10:00 a.m. the following day. Later that afternoon, Fifth Generation sent an email to Brenny stating "Reminder to send carrier info once able!"

10. Unbeknownst to C&L, instead of arranging for its own drivers to pick up the shipment at issue in this litigation, Brenny posted the job to outsource it to a third-party.

---

[2] On information and belief, "MC" refers to a Motor Carrier Number, which is a unique identifier assigned by the Federal Motor Carrier Safety Administration that was, at all times relevant to this litigation, necessary for for-hire transporting regulated goods across state lines.

11. Specifically, on information and belief, Brenny was communicating with an individual that they believed to be named Scott Castleberry via email at scott.dispatchingservices@gmail.com. While the individual with whom Brenny was communicating initially indicated that he was representing Global Spedition, Brenny is believed to have only communicated with him via the above-referenced Gmail account.

12. On or about March 28, 2024, the individual using the Castleberry email address provided Brenny with a Motor Transportation Agreement purportedly signed by Global Spedition. The signature block for the carrier was completed as follows:

```
CARRIER:    GLOBAL SPEDITION
By:         Scott
Title:      Dispatch
            (Authorized Officer or Manager)

Print Name: Scott
```

13. After further delays, Brenny and Fifth Generation confirmed a pick up for March 29, 2024. That morning, Brenny informed Fifth Generation: "Carrier name is GLOBAL SPEDITION LLC MC# 614897." The same day, Brenny provided the Castelberry email with the Tito's Order Number

14. No driver arrived at Fifth Generation's facility at the scheduled time, and Fifth Generation removed the pick up from its schedule.

15. On April 1, 2024, Brenny and Fifth Generation arranged for the shipment to be picked up on the morning of April 2. Brenny notified Fifth Generation "It will be the same company coming in there."

16. On the morning of April 2, 2025, a truck purportedly operated by a different carrier (J&I Express) arrived at Fifth Generation's facility.

17. On information and belief, the driver of the truck that arrived at Fifth Generation's facility presented a paper copy of a temporary commercial driver's license that was set to expire on April 13, 2024, and a hard copy commercial driver's license that had expired on July 9, 2023.

18. Despite the fact that the truck was seemingly operated by a different carrier with a different MC Number than Fifth Generation had been told would be picking up the load (and a different carrier than identified on the Fifth Generation generated Bill of Lading) and a driver with a soon-to-expire temporary commercial driver's license, Fifth Generation loaded the product into the truck and released the shipment.

19. Fifth Generation stamped the Bill of Lading with a note that "All Outbound shipments leaving our facility are being tracked by GPS to destination." Despite this notice, on information and belief, Fifth Generation did not in any way track the shipment after it left Fifth Generation's facility.

20. On information and belief, Brenny knew before the shipment was picked up that they would not be able to track the load or the truck.

21. Sometime after the truck left the Fifth Generation facility, it was diverted by someone other than C&L or any of C&L's agents. The shipment never reached C&L's warehouse in Minnesota.

**Count 1: Negligence**

22. C&L adopts and realleges the preceding paragraphs of its Third-Party Complaint as if fully set out herein.

23. Brenny owed C&L a duty to use reasonable care in ensuring that the shipment reached C&L's warehouse.

24. Brenny breached its duty to C&L by, among other acts of negligence, providing secure details of the shipment to an anonymous Gmail account and failing to track the shipment.

25. If and to the extent C&L is found to be liable to Fifth Generation, C&L has been damaged by Brenny's negligence in an amount to be determined by the evidence at trial.

### Count 2: Common Law Contribution and Indemnity

26. C&L adopts and realleges the preceding paragraphs of its Third-Party Complaint as if fully set out herein.

27. If and to the extent Fifth Generation obtains any judgment against C&L for any damages in this litigation, which C&L disputes, such damages were caused or contributed to by the negligence, breach of contract, or other fault of Brenny in performing its labor in brokering the shipment.

28. If and to the extent Fifth Generation obtains any judgment against C&L for any damages in this litigation, which C&L disputes, C&L is entitled to judgment against Brenny for contribution and/or indemnification based on such negligence, breach of contract, or other fault of Brenny in performing its labor in brokering the shipment.

\*   \*   \*

**WHEREFORE,** Dick Family, Inc., d/b/a C&L Distributing, requests the following relief:

1. An Order dismissing Fifth Generation's claim in its entirety, *or, in the alternative*, an Order awarding damages to C&L against Brenny for any damages to Fifth Generation for which C&L is found liable; and

2. For such other and further relief as the Court deems just and equitable.

[Remainder of this page purposefully left blank.]

        Respectfully submitted.

        **MADIGAN, DAHL & HARLAN, P.A.**

        33 South Sixth Street, Suite 3675
        Minneapolis, Minnesota 55402
        (612) 604-2000; FAX (612) 604-2599
        **Email: bowman@mdh-law.com**

Dated: October 22, 2025        By: */s/ Christopher W. Bowman*
        Christopher W. Bowman, *pro hac vice*
        Minnesota Attorney No. 0389933

           *and*

        David L. LeBas, SBN 12098600
        Michael S. Duncan, SBN 24097628
        NAMAN HOWELL SMITH & LEE, PLLC
        8310 N. Capital of Texas Highway, Ste. 490
        Austin, Texas 78731
        Phone: (512) 479-0300
        Fax: (512) 474-1901
        dlebas@namanhowell.com
        mduncan@namanhowell.com